8 UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
9 AT TACOMA

10 THOMAS EDWARDS,

11           Plaintiff,

12   v.

13 MICHAEL J. ASTRUE, Commissioner of
Social Security,
14
15           Defendant.

CASE NO.   C08-5730BHS-KLS

REPORT AND RECOMMENDATION

Noted for August 28, 2009

16
17

18     Plaintiff, Thomas Edwards, has brought this matter for judicial review of the denial of his
19 applications for disability insurance and supplemental security income ("SSI") benefits. This matter has
20 been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule
21 MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). After
22 reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and
23 Recommendation for the Court's review.

24 <center>FACTUAL AND PROCEDURAL HISTORY</center>

25     Plaintiff currently is 45 years old.[1] Tr. 30. He has a high school education and past work
26 experience as a day laborer, a pizza deliverer, a dishwasher, a preparation cook, a dietary aid, an airline

27
28     [1]Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 1

security representative, a hand packager, a janitor, a furniture assembler, a landscape laborer, a nursery laborer, and a nurse's assistant. Tr. 93, 98, 101, 116, 430-31.

On July 21, 2005, plaintiff filed applications for disability insurance and SSI benefits, alleging disability as of January 1, 1998, due to stress, depression, anxiety, post-traumatic stress disorder ("PTSD"), and a dependent personality disorder, as well as back, memory, learning, cognitive, and vision problems. Tr. 17, 72-74, 92, 112, 375. His applications were denied initially and on reconsideration. Tr. 17, 30-32, 35, 58, 61, 378, 383-85. A hearing was held before an administrative law judge ("ALJ") on December 4, 2007, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 392-439.

On February 20, 2008, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part:

(1) at step one of the sequential disability evaluation process,[2] plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability;

(2) at step two, plaintiff had "severe" impairments consisting of an affective disorder, a personality disorder, Asperger's disorder, a low average IQ, polysubstance abuse, degenerative joint disease of the right shoulder, a neck and back disorder, and a left hip impairment;

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) after step three but before step four, plaintiff had the residual functional capacity to perform sedentary work, with certain additional non-exertional limitations;

(5) at step four, plaintiff was unable to perform his past relevant work; and

(6) at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 17-27. Plaintiff's request for review was denied by the Appeals Council on November 13, 2008, making the ALJ's decision the Commissioner's final decision. Tr. 6; 20 C.F.R. § 404.981, § 416.1481.

On December 8, 2008, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1-#3). The administrative record was filed with the Court on February 18, 2009. (Dkt. #11). Plaintiff argues the ALJ's decision should be reversed and remanded to the Commissioner for an

---

[2]The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

REPORT AND RECOMMENDATION
Page - 2

award of benefits, because she erred in evaluating the objective medical and lay witness evidence in the record.[3] The undersigned agrees that the ALJ erred in determining plaintiff to be not disabled, but for the reasons set forth below, recommends that while the ALJ's decision should be reversed, this matter should be remanded to the Commissioner for further administrative proceedings. Although plaintiff requests oral argument in this matter, the undersigned finds such argument to be unnecessary here.

## DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.  The ALJ's Evaluation of the Medical Evidence

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a

---

[3] Plaintiff also argued in his opening brief that the ALJ erred in assessing his credibility. See (Dkt. #12, pp. 5-7). In his reply brief, however, plaintiff waived that issue. See (Dkt. #16, p. 2). Accordingly, the undersigned deems that issue to be no longer before the Court, and shall not address it here.

REPORT AND RECOMMENDATION
Page - 3

detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A. Dr. Brown

In early July 2005, plaintiff was evaluated by Norma Brown, Ph.D., who diagnosed him with a depressive disorder, a dependant personality disorder, alcohol dependence in early full remission, and a possible cognitive disorder. Tr. 297. Dr. Brown commented that she appeared to have a "severe cognitive deficit," "[v]ery poor judgment" and memory problems concerning the recent past making him "difficult to talk to." Tr. 298. Dr. Brown found him: severely limited in his ability to understand, remember and follow complex instructions, learn new tasks, exercise judgment and make decisions, and respond appropriately to

REPORT AND RECOMMENDATION
Page - 4

and tolerate the pressures and expectations of a normal work setting; markedly limited in his ability to understand, remember and follow simple instructions and perform routine tasks; and moderately limited in her ability to relate appropriately to co-workers and supervisors. Tr. 298.

Dr. Brown estimated that plaintiff would be impaired to the degree indicated above for at least six months and as long as a year. Tr. 299. Dr. Brown noted plaintiff was not presently on any medications, and stated she did not know if mental health intervention was likely to restore or substantially improve his ability to work for pay in a regular manner. Tr. 298-99. Dr. Brown evaluated plaintiff again in late July 2005, diagnosing him with the same mental conditions, except for a rule out cognitive disorder. Tr. 313. In terms of a functional assessment, Dr. Brown rated plaintiff with a global assessment of functioning ("GAF") score of 50,[4] and found he had a below average ability to reason, a low average to borderline memory and ability to understand, a good ability to interact socially, and an unknown ability to adapt. Tr. 313-14. Dr. Brown further opined in relevant part as follows:

> Thomas has been an alcoholic for several years and it is possible that his memory problems are related to his excessive use. Because he has only been sober for less than three months, it is possible that his cognitive ability will improve as he continues to abstain from alcohol.
>
> Based on his poor cognitive performance when he was evaluated on July 12, 2005, his cognitive problems currently may be more pervasive that [sic] what was evidenced in his performance on the [psychological testing conducted] today.

Tr. 313. Ultimately, Dr. Brown deemed plaintiff's prognosis to be "guarded". Tr. 314.

Dr. Brown provided a third written psychological evaluation of plaintiff in early June, 2007, which was based on an interview she conducted with plaintiff's mother. Tr. 353. Dr. Brown stated that such an evaluation was needed because after having interviewed him "on several occasions," it appeared plaintiff might be suffering from Asperger's Disorder. Id. In her evaluation report, Dr. Brown opined that plaintiff seemed to be "extremely dependent on his parents" and "to have severe problems with judgment and comprehension regarding task demands as well as difficulty with follow-through." Tr. 357. Dr. Brown felt plaintiff "clearly" displayed "the symptoms and characteristics of Asperger's Disorder," opining

---

[4]"A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as an inability to keep a job." Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) ("DSM-IV-TR") at 34); see also England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007) (GAF score of 50 reflects serious limitations in individual's general ability to perform basic tasks of daily life).

REPORT AND RECOMMENDATION
Page - 5

specifically that:

> . . . The fact that he is now 43 years old and has never been able to maintain competitive employment, no matter how hard he and his parents have worked at this, certainly speaks to the fact that he appears to have a disability which significantly impairs his ability to maintain employment. . . .

Id. Dr. Brown went on to state that she considered plaintiff's Asperger's Disorder to be "continuous and life-long," and that "[a]s is typical of many individuals with Asperger's Disorder," he appeared "to have developed both a depressive and an anxiety disorder." Tr. 358.

Dr. Brown further diagnosed plaintiff with alcohol dependence in reported full remission, and noted that he displayed "maladaptive personality features co-related to a Dependent Personality Disorder," given the following:

> . . . [H]is difficulty making everyday decisions without excessive advice from his mother; his need for his mother to assume responsibility for many major areas of his life; his difficulty initiating projects due to lack of self-confidence; and his urgent need to seek another relationship as a source of care and support when a close relationship ends.

Id. Dr. Brown also assessed plaintiff with a current GAF score of 40, indicating a "[m]ajor impairment in several areas," including being unable to keep a job, having no reciprocal close relationship except with his parents, and having an impairment in judgment.[5] Tr. 359. She deemed his prognosis to be "[p]oor" due to his problems appearing to be chronic. Id.

In terms of ability to reason, Dr. Brown believed plaintiff to be within normal limits, and she felt he had normal memory as well. Id. Dr. Brown opined, though, that he had "[p]oor understanding," that his social interaction was "[s]ignificantly impaired," and that his adaptation also was "[p]oor", as he seemed "to suffer from anxiety" when "out of his 'comfort zone,'" further opining in relevant part:

> . . . Thomas clearly cannot maintain normal competitive employment and should be considered permanently disabled. His history indicates that he cannot follow one-step instructions without direct supervision and, even if he could, he has so many maladaptive social behaviors that he could not maintain regular employment without significant problems occurring over time. His disability dates to the last time he was employed on a full-time regular basis. He should definitely not manage his own funds and needs a protective payee.

Tr. 358-59.

---

[5]"A GAF score of 31-40 is extremely low, and 'indicates . . . major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood.'" Salazar v. Barnhart, 468 F.3d 615, 624 n.4 (10th Cir. 2006) (quoting DSM-IV-TR at 32).

REPORT AND RECOMMENDATION
Page - 6

1 In her decision, the ALJ noted Dr. Brown opined in her late July 2005 evaluation of plaintiff that
2 he "had below average ability to reason, low average to borderline understanding and memory, good
3 ability to sustain concentration and persistence, good social interaction, and unknown adaptation." Tr. 24.
4 The ALJ then stated she was giving "this opinion significant weight." Id. Plaintiff argues that by assessing
5 him with a mental residual functional capacity to perform only simple, repetitive tasks (see Tr. 22) – but
6 not finding he had any difficulty tolerating the pressures and expectations of a normal work setting,
7 learning new tasks, exercising judgment and making decisions, or relating appropriately to co-workers and
8 supervisors – the ALJ's findings conflicted with the limitations Dr. Brown noted in her early July 2005
9 opinion. He further argues that by not giving any reasons for rejecting those limitations, or even
10 mentioning them specifically in her decision, the ALJ erred. The undersigned agrees the ALJ erred here.

11 As defendant concedes, it was error for the ALJ not to have provided any analysis of Dr. Brown's
12 early July 2005 findings in her decision. Defendant is incorrect, however, in asserting that such error was
13 harmless. An error is harmless only if it is non-prejudicial to the claimant or "inconsequential" to the
14 ALJ's "ultimate nondisability determination." Stout v. Commissioner, Social Security Admin., 454 F.3d
15 1050, 1055 (9th Cir. 2006). Defendant asserts that the written report Dr. Brown issued in late July 2005,
16 also summarized her early July 2005 evaluation, that it therefore was more complete than the early July
17 2005 evaluation – accounting for all the psychological testing she conducted – and that the early July 2005
18 evaluation findings were expressed on a "check-box" form.

19 It is true that the Ninth Circuit has a preference for individualized opinions over those consisting of
20 checked boxes. See Murray v. Heckler, 722 F.2d 499, 501 (9th Cir.1983). This, however, was not a reason
21 the ALJ gave for discounting the findings contained in Dr. Brown's early July 2005 evaluation report. As
22 such, the Court may not uphold the ALJ's evaluation of Dr. Brown's findings on that basis. See Connett v.
23 Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (error to affirm ALJ's credibility decision based on evidence
24 ALJ did not discuss). In addition, while Dr. Brown's late July 2005 evaluation may contain findings that
25 provide more or additional insight into plaintiff's functioning and/or limitations, nowhere therein does Dr.
26 Brown indicate it should be considered to the exclusion of her earlier opinion.

27 In any event, again, this is not a reason the ALJ gave for discounting the findings contained in Dr.
28 Brown's early July 2005 opinion. As further support for his argument, defendant notes that the ALJ gave
"significant weight" to Dr. Brown's late July 2005 opinion. Tr. 24. Again, while true, as pointed out by

REPORT AND RECOMMENDATION
Page - 7

plaintiff, the ALJ still should have considered the extent to which that opinion differed from Dr. Brown's earlier one, and explained what weight she was giving thereto and why she gave greater weight to the later opinion. Because the ALJ did not do so, she committed error.

With respect to Dr. Brown's early June 2007 opinion, the ALJ found in relevant part as follows:

> . . . Dr. Brown's recent conclusions are based entirely on the report of the claimant's mother rather than Dr. Brown's own professional observations; her entire written report is literally a recitation of the claimant's mother's reports, with no mention of an examination. Furthermore, her statement that the claimant cannot follow one-step instructions is contrary to findings on other examinations. Finally, Dr. Brown's conclusion that the claimant was disabled as of the date he was last employed full-time is in conflict with the very nature of his supposedly longstanding Asperger's disorder, which would have arisen during the developmental period. . . . Therefore, I give Dr. Brown's most recent opinion little weight.

Tr. 24-25. Plaintiff argues these are not specific and legitimate reasons for rejecting Dr. Brown's findings. Again, the undersigned agrees the ALJ erred here.

Defendant states it is significant that the ALJ noted Dr. Brown's findings in the report were based entirely on plaintiff's mother's report, rather than on her own professional observations. The undersigned agrees with plaintiff, however, that this is not a legitimate basis for rejecting those findings. Neither the ALJ nor defendant has pointed to any authority, legal or otherwise, as support for their implied assertion that an examining psychologist may not rely, in whole or in part, on the report of a parent – or other close family member for that matter – in assessing the mental health condition and/or functional capabilities of the individual being examined. Indeed, as the Commissioner's own regulations provide, descriptions by friends and family members who are in a position to observe a claimant's symptoms and daily activities must be treated as competent evidence. See Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing 20 C.F.R. § 404.1513(e)(2)).

Nor is there anything in the record or before the Court to establish that an examining psychologist may not base his or her "own professional observations" or opinion of a claimant's functioning on the basis of reports of that claimant's history and functioning by a close family member who knows him or her well, and who is in a position to observe him or her. Likewise, although Dr. Brown may not have conducted an actual examination of plaintiff at the time, no authority or evidence has been provided to demonstrate such an examination – at least in the case of a diagnosis of Asperger's disorder – is required to be performed by a psychologist, particularly when, as here, two prior examinations had been conducted

REPORT AND RECOMMENDATION
Page - 8

by the same medical opinion source, albeit some two years earlier.  As such, these in themselves were not legitimate reasons for rejecting Dr. Brown's findings.

In regard to the ALJ's determination that Dr. Brown's conclusion that plaintiff "was disabled as of the date he was last employed full-time" conflicted with "the very nature of his supposedly longstanding Asperger's disorder, which would have arisen during the developmental period," this lacks legitimacy as well. Tr. 25.  The ALJ does not point to, nor can the undersigned find, anything in the record to support a finding that Asperger's disorder or any other mental health condition of longstanding nature cannot after the developmental period, become functionally disabling, even if it was not disabling initially.  That is, in so finding, the ALJ here appears to improperly have based her determination here on her "own expertise." See Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) (ALJ should avoid commenting on meaning of objective medical findings without supporting medical expert testimony).

On the other hand, the ALJ correctly noted Dr. Brown's statement that plaintiff could not follow one-step instructions was inconsistent with findings on other examinations. See Batson , 359 F.3d at 1195 (ALJ need not accept opinion of physician, if inadequately supported by clinical findings or by record as whole); Thomas, 278 F.3d at 957; Tonapetyan, 242 F.3d at 1149.  For example, plaintiff was examined in early April 2005, by Michael Corpolongo, Ph.D., who found him to have only a moderate limitation in his ability to follow "simple (one or two step) instructions."[6] Tr. 290.  Dr. Brown herself previously found in early July 2005, that plaintiff was able to follow such instructions, although she did find he had a marked limitation in his ability to do so.[7] Tr. 298.  In late October 2005, William J. Chalstrom, Ph.D., another examining psychologist, found that plaintiff was able to follow "a 3-step command," as well as understand simple and complex instructions. Tr. 321-22.  Nevertheless, given all of the other reasons the ALJ gave for

---

[6]The psychological/psychiatric evaluation form Dr. Corpolongo used to report his findings and opinions defines a moderate limitation as constituting a "[s]ignificant interference with basic work-related activities," whereas it defines a "severe" limitation, as being an "[i]nability to perform one or more" such activities. Tr. 288.  Clearly, therefore, unlike Dr. Brown, Dr. Corpolongo did not deem plaintiff to be incapable of performing one-step instructions.

[7]Dr. Brown used the same form as Dr. Corpolongo to report her findings and opinions, which defines a marked limitation as one causing "[v]ery significant interference with basic work activities," which again, though serious, falls short of a finding of inability to perform them.  Dr. Brown's early July 2005 statement itself, therefore, directly contradicts her early June 2007 opinion that plaintiff's "history indicates that he cannot follow one-step instructions without direct supervision." Tr. 358.  Given that the history related by plaintiff's mother in early June 2007 (see Tr. 353-56), covered a period dating back to prior to the early July 2005 evaluation report provided by Dr. Brown, and that clearly at least some, if not all, of that history was available from plaintiff as well at the time of that report (see Tr. 296), but did not result in Dr. Brown then finding an inability to follow such instructions, the ALJ correctly noted that inconsistency as a reason for rejecting this limitation.

REPORT AND RECOMMENDATION
Page - 9

1 rejecting Dr. Brown's early June 2007 findings and opinions were improper as discussed above, the ALJ
2 erred overall in doing so.

### B. Dr. Chalstrom

As discussed above, plaintiff underwent a psychological evaluation in late October 2005, conducted by William J. Chalstrom, Ph.D., who diagnosed him with an early onset dysthymic disorder, alcohol abuse in early full remission, a mixed personality disorder with schizotypal, avoidant and dependent traits, and a current GAF score of 52.[8] Tr. 322. In terms of the personality disorder, Dr. Chalstrom stated it was "deeply ingrained," and expected he would "continue to have problems around other people." Id. Nevertheless, Dr. Chalstrom found plaintiff seemed "to have adequate reasoning abilities," and while he appeared "to have some problems with his remote memory," as discussed above, he "could understand both simple and more complex instructions." Id. In addition, while plaintiff "seemed to have poor social interaction skills," his "sustained concentration" also was "good" and his persistence was "adequate". Id.

The ALJ addressed Dr. Chalstrom's findings and opinion in relevant part as follows:

> Dr. Chalstrom . . . noted that the claimant could understand both simple and more complex instructions during the examination, although he had some problems with remote memory. 8F/5. He also had good sustained concentration. Dr. Chalstrom added, however, that the claimant appeared to have poor social interaction skills. I give this opinion significant weight since it is consistent with the other evidence of record.

Tr. 25. Plaintiff argues that although the ALJ stated he was giving Dr. Chalstrom's opinion "significant weight," she found he had only "mild difficulties in maintaining social functioning" at step three of the sequential disability evaluation process, and did not include any limitations concerning his ability to deal with others in the work place in assessing his residual functional capacity. Tr. 21-22. She asserts the ALJ's failure to adopt Dr. Chalstrom's more restrictive limitations without explanation was error.

Defendant concedes the ALJ erred in not providing such an explanation, but again argues this error was harmless. This is because, defendant asserts, while the ALJ did not include any social limitations in his assessment of plaintiff's residual functional capacity (see Tr. 22), the hypothetical question she posed

---

[8]"A GAF of 51-60 indicates '[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" Tagger v. Astrue, 536 F.Supp.2d 1170, 1173 n.6 (C.D.Cal. 2008) (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34).

1 to the vocational expert at the hearing expressly limited the hypothetical individual "to working with
2 things, not people" (Tr. 436). Defendant also points to the vocational expert's testimony confirming the
3 jobs she identified – assembler and addresser – involved "working with things . . . versus people" (Tr. 436-
4 37), and the definition of those two jobs contained in the Dictionary of Occupational Titles ("DOT"),
5 which do not require there to by any significant interaction with other people. DOT 209.587-010, 713.687-
6 018.

The undersigned disagrees that the ALJ's error here was harmless. First, it is not at all clear that
the limitation to "working with things, not people" contained in the hypothetical question, necessarily
equates with Dr. Chalstrom's opinion that plaintiff would "continue to have problems around other
people," and "seemed to have poor social interaction skills." That is, it is not certain that the ALJ's
limitation excludes being around people in the workplace – as opposed to what the actual subject of the
work is – which could pose difficulties for someone having problems interacting with others. As noted by
plaintiff, the jobs the vocational expert identified may not be jobs performed in isolation, and may, indeed
likely, involve having to deal with co-workers and supervisors. In addition, a job requiring no
"significant" interaction with other people, is not the same thing as having "no" such interaction.

Were Dr. Chalstrom's limitations to be adopted, therefore, it is unclear whether plaintiff still would
be able to perform the above jobs. As again noted by plaintiff, the vocational expert also testified that for
an individual who had difficulty accepting instructions and responding to a supervisor on an occasional
basis, "any kind of an outburst" in responding to a supervisor would "typically" not be tolerated. Tr. 438.
Because the social limitations opined by Dr. Chalstrom potentially could result in such a difficulty and/or
outburst, the undersigned cannot say that the ALJ's error here was non-prejudicial to plaintiff or irrelevant
to her ultimate disability determination, and thus harmless. Stout, 454 F.3d at 1055.

C. Dr. Corpolongo

Michael Corpolongo, Ph.D., evaluated plaintiff in early April 2005, diagnosing him with a
schizotypal personality disorder with dependent features, a depressive disorder, attention deficit disorder
by history, and alcohol abuse, along with certain other possible disorders, including a cognitive disorder
and an anxiety disorder. Tr. 289. Dr. Corpolongo also found plaintiff to be markedly limited in his ability
to understand, remember and follow complex instructions, learn new tasks and exercise judgment, and, as

noted above, moderately limited in his ability to understand, remember and follow simple instructions, as well as in his ability to relate appropriately to co-workers and supervisors and respond appropriately to and tolerate the pressures and expectations of a normal work setting. Tr. 290. However, Dr. Corpolongo did feel that mental health intervention was likely to restore or substantially improve plaintiff's ability to work for pay in a regular and predictable manner. Tr. 291.

Plaintiff argues that because the limitations Dr. Corpolongo found are inconsistent with the mental residual functional capacity the ALJ assessed him with – which only limits plaintiff to performing simple, repetitive tasks, with no restrictions on other cognitive abilities or areas of social functioning – it was error for the ALJ not only to fail to explain why those limitations were not adopted, but to fail to discuss them at all in her decision. In response, defendant contests plaintiff's assertion that the ALJ failed to address Dr. Corpolongo's evaluation, noting that it was cited to repeatedly, and thus considered, in her decision. But the ALJ only referred to that evaluation by exhibit number, and merely in the context of discussing issues other than the specific findings and opinions contained therein. See, e.g., Tr. 19-20. This is not sufficient to satisfy the ALJ's duty to "consider" all significant probative evidence submitted to her.

Defendant admits the ALJ did err in failing to explain why the limitations Dr. Corpolongo found were not adopted, but here too argues that error was harmless. Defendant asserts this is so, because Dr. Corpolongo questioned whether plaintiff was malingering during the evaluation. But there is nothing in that evaluation to indicate Dr. Corpolongo failed to take such possible malingering into account when he assessed plaintiff's functional capabilities, or otherwise felt that possibility had diminished the integrity or reliability of his findings. Indeed, the fact that Dr. Corpolongo mentioned plaintiff's possible malingering, strongly indicates those findings were felt to be accurate despite this.

Next, defendant argues harmless error occurred here, because Dr. Chalstrom's evaluation report, to which the ALJ gave significant weight, relied in part on that provided by Dr. Corpolongo. The implication here presumably is that by giving significant weight to Dr. Chalstrom's report – which in turn contains one sentence merely noting plaintiff was evaluated by Dr. Corpolongo in early April 2005 (Tr. 319) – the ALJ also properly considered the evaluation report provided by Dr. Corpolongo. Again, reviewing one medical report that does not discuss in any significant detail another such report, hardly suffices to satisfy the duty of the ALJ to fully and fairly develop the record (including considering the significant probative evidence

in that latter report), and to give specific and legitimate reasons for rejecting the opinion of an examining medical source. See Lester, 81 F.3d at 830-31; Tonapetyan, 242 F.3d at 1150.

Lastly, in regard to the social and cognitive limitations Dr. Corpolongo found, defendant argues they were adequately accounted for by those the ALJ included in the hypothetical question she posed to the vocational expert, i.e., the ability to perform only simple, repetitive tasks and working only with things, not people. The undersigned already has rejected this argument in regard to Dr. Chalstrom's evaluation report, and finds even more reason to reject it here. Not only does a limitation to working with things, not people, fail to adequately cover Dr. Corpolongo's moderate limitation in the ability to relate appropriately to co-workers and supervisors for the reasons discussed above, it certainly fails to do so in regard to a moderate limitation on the ability to tolerate the pressures and expectations of a normal work setting. The limitation to simple, repetitive tasks also does not clearly cover the three moderate cognitive limitations – concerning learning new tasks and exercising judgment and making decisions – Dr. Corpolongo found.

II. The ALJ's Evaluation of the Lay Witness Evidence

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Id. at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

As noted by plaintiff, the record contains several written statements provided by plaintiff's mother regarding his impairments, symptoms and functioning, as well as extensive comments from her concerning the same provided to Dr. Brown. See Tr. 75-83, 121-29, 138-46, 353-57. In regard to those statements and comments, the ALJ stated that they supported plaintiff's allegations, but because they were "not consistent with the bulk of the medical evidence of record," she accorded them "little weight." Tr. 25. The ALJ erred here, plaintiff argues, because under Bruce v. Astrue, 557 F.3d 1113 (9th Cir. 2009), an ALJ may not reject lay witness evidence merely because it is not supported by the medical evidence in the record.

It is true that Ninth Circuit held in Bruce that the claimant's wife's testimony in that case could not

be discredited "as not supported by medical evidence in the record." Id. at 1116. In so holding, the Ninth Circuit relied on its prior decision in Smolen v. Chater, 80 F.3d 1273 (9th Cir. 1996), which held that the ALJ improperly rejected the testimony of the claimant's family on the basis that medical records did not corroborate the claimant's symptoms, because in so doing, the ALJ violated the Commissioner's directive "to consider the testimony of lay witnesses where the claimant's alleged symptoms are *unsupported* by her medical records." Bruce, 557 .3d at 1116 (citing 80 F.3d at 1289) (emphasis in original). However, the Ninth Circuit did not address two earlier decisions in which it expressly held that "[o]ne reason for which an ALJ my discount lay testimony is that it conflicts with medical evidence." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) (citing Vincent v. Heckler, 739 F.2d 1393, 1995 (9th Cir. 1984) (ALJ properly discounted lay testimony that conflicted with available medical evidence)).

Accordingly, although Bruce is the Ninth Circuit's most recent pronouncement on this issue, given that no mention of Lewis and Vincent were made in that case, and that neither of the holdings in those two earlier decisions concerning this issue were expressly reversed, it is not at all clear whether discounting lay witness evidence on the basis that it is not supported by the objective medical evidence in the record is no longer allowed. Nevertheless, that apparent conflict in Ninth Circuit precedent does not prevent resolution of this issue in this case. This is because the undersigned finds the ALJ's general reference to "the bulk of the medical evidence of record," to be too vague to constitute even a "germane" reason for discounting the statements and comments of plaintiff's mother, in light of the level of detail she provided therein in regard to plaintiff's symptoms and functioning. This stated basis for discounting those statements and comments, furthermore, also is questionable given the ALJ's errors in evaluating the objective medical evidence in the record discussed above.

III. This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical and lay witness evidence in the record concerning plaintiff's mental functional impairments and limitations, his residual functional capacity and his ability to perform other jobs existing in significant numbers in the national economy, this matter should be remanded to the Commissioner for further administrative proceedings. This is particularly true in light of the ALJ's adverse determination concerning plaintiff's credibility, which, as noted above, he has chosen to not to challenge in these proceedings.

## CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **August 28, 2009**, as noted in the caption.

DATED this 3rd day of August, 2009.

Karen L. Strombom
United States Magistrate Judge